UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § <br> § <br> Plaintiff, § <br> § <br> v. § <br> § <br> $744,166.67 from Treasury Customs § <br> Suspense Account, § <br> § <br> Defendant in rem. § <br> § | CIVIL ACTION NO. 3:25-CV-0865-B |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff the United States of America (the "Government")'s Motion for Default Judgment and Final Judgment of Forfeiture (Doc. 9). For the reasons provided below, the Motion is **GRANTED.**

### I.

### BACKGROUND

This case arises out of an unlawful transfer of money stemming from a business email compromise scheme. *Id.* ¶ 9. A hacker infiltrated the email account of SWK Holdings Corporation's ("SWK Holdings") Director of Underwriting and sent false wiring instructions to Shield Therapeutics PLC for its routine interest payment to SWK Holdings. Following the false instructions, Shield Therapeutics wired $744,166.67 into a Wells Fargo Bank business account belonging to Ruth Harger ("Harger"). *Id.* Next, Harger transferred the subject funds to her personal checking account. *Id*. Wells Fargo subsequently closed Harger's accounts and issued her cashier's

checks for the subject funds. *Id.* Harger then confessed to law enforcement and returned the checks to Wells Fargo. *Id.*

On April 8, 2025, the Government brought its Verified Complaint for Forfeiture in rem for the forfeiture of the Defendant Property—$744,166.67—pursuant to 18 U.S.C. §§ 981(a)(1)(A) and 981(a)(1)(C) for alleged property related to wire fraud and money laundering. Doc. 1, Compl. On June 11, 2025, the Clerk of the Court entered default. *See* Doc. 8, Entry of Default. The Government now moves for default judgment against Harger and all other persons and entities and seeks a final judgment of forfeiture. *See* Doc. 9, Mot. Default J., 1. The Court considers the Motion below.

## II.

## LEGAL STANDARD

A.   *Default Judgment*

Federal Rule of Civil Procedure 55 sets forth the requirements for obtaining a default judgment. A plaintiff may only obtain a default judgment after securing an entry of default by the clerk of court. The entry of default occurs when the plaintiff demonstrates by affidavit or otherwise that the defendant is in default, which means the defendant "has failed to plead or otherwise respond to the complaint within the time required by the Federal Rules." *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996); Fed. R. Civ. P. 55(a). However, an entry of default does not automatically entitle a plaintiff to judgment. A plaintiff must apply for judgment based on the defendant's default. *See Brown*, 84 F.3d at 141.

Courts must carefully review the pleadings to ensure that a plaintiff is entitled to a default judgment. To that end, courts assess: "(1) whether the entry of default is procedurally warranted, (2) the substantive merits of the plaintiff's claims and whether there is a sufficient basis

in the pleadings for the judgment, and (3) what form of relief, if any, a plaintiff should receive." *Walker v. Koelzer*, 715 F. Supp. 3d 956, 961–62 (N.D. Tex. 2024) (Boyle, J.) (quoting *Griffin v. O'Brien, Wexler, & Assocs.*, 680 F. Supp. 3d 772, 780 (E.D. Tex. 2023). In considering a motion for default judgment, the court accepts as true the well-pleaded allegations of facts in the complaint. *See Nishimatsu Constr. Co., Ltd. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).

Where parties with an interest in property at issue in a forfeiture proceeding fail to timely file an answer or claim to the property, default against those properties is proper. *See United States v. One 1978 Piper Navajo PA-31 Aircraft*, 748 F.2d 316, 320 (5th Cir. 1984) (holding that a district court did not abuse its discretion by granting default judgment where no claim or responsive pleading was filed); *United States v. $44,860.00 in U.S. Currency*, No. 3:08-CV-1870-O, 2010 WL 157538, at *1, *3 (N.D. Tex. Jan. 14, 2010) (O'Connor, J.) (granting default judgment in a forfeiture case where no potential claimant filed an answer or claim in the forfeiture case).

B.   *Legal Standard for Civil Forfeiture*

To obtain a forfeiture judgment, the Government must show it complied with the pleading and notice requirements set out in Rule G of the Supplemental Rules for Admiralty or Maritime claims and Asset Forfeiture Actions, Federal Rules of Civil Procedure.

First, a complaint for a forfeiture action in rem arising from federal statute must:

> (a) be verified; (b) state the grounds for subject-matter jurisdiction, in rem jurisdiction over the defendant property, and venue; (c) describe the property with reasonable particularity; (d) if the property is tangible, state its location when any seizure occurred and—if different—its location when the action is filed; (e) identify the statute under which the forfeiture action is brought; and (f) state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial.

Fed. R. Civ. P. Supp. R. G(2).

Moreover, actions in rem require the Government to allege in its complaint facts with sufficient particularity to support a reasonable belief that it will be able to bear its burden at trial. *See* Fed. R. Civ. P. Supp. R. E(2); Fed. R. Civ. P. Supp. R. G(2)(f). "While . . . the Government need not *prove* elements of its case at the pleading stage, the Government is compelled by the specificity requirement of Rule E(2)(a) to allege facts which are sufficient to support a reasonable belief that those elements are met." *United States v. $49,000 Currency*, 330 F.3d 371, 375 n.8 (5th Cir. 2003).

Second, the Government must publish notice of its forfeiture action. Fed. R. Civ. P. Supp. R. G(4). The Government can publish this notice by "posting [it] on an official internet government forfeiture site for at least 30 consecutive days." Fed. R. Civ. P. Supp. R. G(4)(a)(iv)(C). The deadline to file a claim for persons who did not receive a direct notice from the Government is "no later than 60 days after the first day of publication on an official internet government forfeiture site." Fed. R. Civ. P. Supp. R. G(5)(a)(ii)(B).

Additionally, "[t]he government must send notice of the action and a copy of the complaint to any person who reasonably appears to be a potential claimant on the facts known to the government before [60 days after the first day of publication on an official internet government forfeiture site]." Fed. R. Civ. P. Supp. R. G(4)(b)(i). Notice to potential claimants must state:

> (A) the date when the notice is sent; (B) a deadline for filing a claim, at least 35 days after the notice is sent; (C) that an answer or a motion under Rule 12 must be filed no later than 21 days after filing the claim; and (D) the name of the government attorney to be served with the claim and answer.

Fed. R. Civ. P. Supp. R. G(4)(b)(ii). Thus, the Government cannot move for default until thirty-five (35) days after it sent the notice. *Id.* Notice "is sent on the date when it is placed in the mail, delivered to a commercial carrier, or sent by electronic mail." Fed. R. Civ. P. Supp. R. G(4)(b)(iv).

### III.

### ANALYSIS

*A. An Entry of Default Judgment is Procedurally Warranted*

The Court must first determine whether the entry of default judgment is procedurally warranted. To make this determination, the Court considers:

> [1] whether material issues of fact are at issue, [2] whether there has been substantial prejudice, [3] whether the grounds for default are clearly established, [4] whether the default was caused by a good faith mistake or excusable neglect, [5] the harshness of a default judgment, and [6] whether the court would think itself obliged to set aside the default on the defendant's motion.

*See Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). Here, each factor suggests that an entry of default judgment is procedurally warranted.

First, there is no dispute of material fact because, by defaulting, potential claimants "admit[] the plaintiff's well-pleaded allegations of fact[.]" *Nishimatsu*, 515 F.2d at 1206. Second, the potential claimants' "failure to respond threatens to bring the adversary process to a halt, effectively prejudicing [the government's] interests." *See Ins. Co. of the W. v. H & G Contractors, Inc.*, No. C-10-390, 2011 WL 4738197, at * 3 (S.D. Tex. Oct. 5, 2011) (citing *Lindsey*, 161 F.3d at 893) (other citation omitted). Third, the grounds for default judgment are clearly established because no potential claimant has filed any responsive pleadings or otherwise participated in this case. *See Lindsey*, 161 F.3d at 893 ("The clerk may enter a default judgment . . . where the defendant initially fails to appear."). Fourth, there is no evidence before the Court indicating that silence is the result of a "good faith mistake or excusable neglect." *See id.* Fifth, a default judgment is not unfairly harsh because the Government duly posted the statutorily required forfeiture notice on an official government website from April 11, 2025, to May 10, 2025, and no potential claimants answered or

otherwise responded. *See id.* Moreover, Harger, who received direct notice of the forfeiture action, similarly failed to answer or otherwise respond. *See id.* Sixth, the Court is not aware of any facts that would give rise to "good cause" to set aside the default. *See id.* In sum, after reviewing the *Lindsey* factors, the Court concludes that the Government has met the procedural requirements for default judgment.

*B.  There is a Sufficient Basis in the Pleadings for Judgment*

Next, the Court "assess[es] the substantive merits of the plaintiff's claims and determine[s] whether there is a sufficient basis in the pleadings for the judgment." *J & J Sports Prods., Inc. v. Morelia Mexican Rest., Inc.*, 126 F. Supp. 3d 809, 814 (N.D. Tex. 2015) (Boyle, J.). To obtain a forfeiture judgment, the Government must comply with the Federal Rules' complaint and notice requirements for forfeiture actions in rem. *See generally* Fed. R. Civ. P. Supp. R. G. The Court addresses each in turn.

   1. <u>The Government's complaint is sufficient to support a forfeiture judgment.</u>

The Government's complaint complies with the requirements set out in Rule G and presents sufficient facts to show a reasonable belief that it can meet its burden of proof at trial. *See id.*

First, the Government's complaint is verified. Doc. 1, Compl., Verification, 10; *see* FED. R. CIV. P. SUPP. R. G(2)(a).

Second, the complaint properly states the grounds for subject matter jurisdiction under 28 U.S.C §§ 1345 and 1355(a) and *in rem* jurisdiction under 28 U.S.C § 1355(b). Doc. 1, Compl. ¶ 2; *see* Fed. R. Civ. P. Supp. R. G(2)(b). The complaint also properly states that venue is proper in this Court under 28 U.SC. §§ 1355(b)(1)(A) and 1391(b) because acts giving rise to the forfeiture occurred in this district. Doc. 1, Compl. ¶ 3; *see* Fed. R. Civ. P. Supp. R. G(2)(b).

Third, the Government describes the Defendant Property—$744,166.67—with reasonable particularity, it identifies the location of the seizure as Wells Fargo, and it identifies the location at the time of filing as the Federal Reserve Bank of New York. Doc. 1, Compl. ¶¶ 5–7; *see* Fed. R. Civ. P. Supp. R. G(2)(c)–(d).

Fourth, the Government identifies the statutes under which the forfeiture action is brought: (1) forfeiture of property related to wire fraud under 18 U.S.C. § 981(a)(1)(C); and (2) forfeiture of property related to money laundering under 18 U.S.C. § 981(a)(1)(A). Doc. 1, Compl. ¶¶ 26–37[1]; *see* Fed. R. Civ. P. Supp. R. G(2)(e).

Fifth, the Government has alleged sufficient facts supporting "a reasonable belief that [it] will be able to meet its burden of proof at trial." Fed. R. Civ. P. Supp. R. G(2)(f); *see also* Fed. R. Civ. P. Supp. R. E(2)(a) ("[T]he complaint shall state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able . . . to commence an investigation of the facts and to frame a responsive pleading.").

The Complaint alleges that a hacker infiltrated SWK Holdings' Director of Underwriting's email account, emailed false wiring instructions to a Controller at Shield Therapeutics, and confirmed the false instructions by sending the same request on the SWK Holdings' Chief Financial Officer's letterhead. Doc. 1, Compl. ¶¶ 13–14. On February 13, 2025, Shield Therapeutics' bank, HSBC Bank UK, requested HSBC Bank US process a quarterly interest payment of $744,166.67 from Shield Therapeutics' account to SWK Holdings. *Id.* ¶¶ 9–10. Due to the hacker's false wiring instructions, SWK Holdings never received the funds. *Id.* ¶ 12. Instead, the $744,166.67 was

---

[1] The Government's complaint misnumbers its paragraphs after paragraph 22. The Court cites to paragraph numbers as if the complaint continued to number its paragraphs consecutively, e.g., the second paragraph 13 on page 5 of the Complaint is properly re-numbered paragraph 23 and referred to as paragraph 23 by the Court.

deposited into Ruth Harger dba RHH Enterprises' Wells Fargo Bank account. *Id.* Harger than transferred $690,000.00 to her personal checking account. *Id.* ¶ 17. Citing suspicious activity, Wells Fargo prevented Harger from removing the $690,000.00 from her personal checking account. *Id.* ¶ 18. In response to Wells Fargo's questions, Harger first answered the money was a business investment and then stated it was money for a medical procedure. *Id.* On February 28, 2025, Wells Fargo closed the Ruth Harger dba RHH Enterprises account and Harger personal checking account for "suspected fraudulent activity" and issued two cashier's checks to Harger for the funds from those accounts. *Id.* ¶ 19. On the same day, the HSBC Bank US informed Wells Fargo of the fraudulent transfer. *Id.* ¶ 16. On March 10, 2025, Harger voluntarily spoke with law enforcement agents, admitted an individual she met online instructed her to open a business account and move money through it, and confessed that she has no relationship with Shield Therapeutics or SWK Holdings. *Id.* ¶¶ 20–22. Harger then turned the checks over to Wells Fargo, and Well Fargo held the checks until March 27, 2025, when per a federal seizure warrant, it transferred the subject funds to the United States Secret Service. *Id.* ¶¶ 23–25.

Based on these allegations, the Court finds that the Government has presented sufficient facts supporting "a reasonable belief that [it] will be able to meet its burden of proof at trial" under §§ 981(a)(1)(A) and § 981(a)(1)(C). *See* Fed. R. Civ. P. Supp. R. G(2)(f).

2.      <u>The Government complied with the notice requirements, and no party with an interest has pled or appeared.</u>

The Government has complied with the notice requirements set out in Rule G(4). The Government published a notice of the forfeiture on an official government forfeiture website on April 11, 2025, and left the notice posted until May 10, 2025. Doc. 9, Mot. ¶¶ 1–3; *see* Fed. R. Civ.

P. Supp. R. G(4)(a)(iv)(C). Moreover, the Government identified one individual who reasonably appeared to be a potential claimant, Harger, and sent notice of the action and a copy of the complaint to her on April 10, 2025. Doc. 9, Mot. ¶¶ 4–5; Doc. 7-1, Req. Entry Default; Fed. R. Civ. P. Supp. R. G(4)(b)(i). The notice was successfully delivered to Harger on April 16, 2025. Doc. 9, Mot. ¶ 4; Doc. 7-1, Req. Entry Default. As required, the notice sent to Harger included the date the notice was sent, the deadline and procedure for filing a claim, the answer or Rule 12 filing requirement, and the name of the attorney to be served with the claim and the answer. *Id.*; *see* Fed. R. Civ. P. Supp. R. G(4)(b)(ii). Because the Government published notice of this action and provided direct notice of this action to Harger, the Court finds that the Government complied with the notice requirements necessary to receive a judgment of forfeiture.

Harger's deadline to file a claim or answer was May 15, 2025. Fed. R. Civ. P. Supp. R. G(5)(a)(ii)(A); Fed. R. Civ. P. Supp. R. G(4)(b)(ii)(B). Moreover, a potential interested claimant who did not receive direct notice of the forfeiture had until June 10, 2025, to file a claim or answer. Fed. R. Civ. P. Supp. R. G(5)(a)(ii)(B). The Government has shown that no potential claimants have filed claims for the Defendant Property and that the deadlines to file such claims have passed. Doc. 9, Mot. ¶¶ 5–6. Therefore, all potential claimants are in default.

## IV.

## CONCLUSION

The Government has shown that it [1] complied with the complaint and notice requirements of Rule G, [2] alleged facts with sufficient particularity that a potential claimant could commence an investigation of the facts and frame a responsive pleading pursuant to Rule E(2), and [3] the deadline to file a claim or answer has passed, such that any potential claimant is in default.

Accordingly, the Court **GRANTS** the Government's Motion for Default Judgment (Doc. 9).

This Court **ENTERS** a final judgment forfeiting all right, title, and interest in the Defendant in rem $744,166.67 from Treasury Customs Suspense Account to the United States of America.

The Attorney General, or a designee, is **AUTHORIZED** to dispose of the forfeited property in accordance with law.

**SO ORDERED.**

**SIGNED: September 16, 2025.**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE